**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------------

PATTI'S PITAS, LLC, QUEEN CITY
TOURS, MARK A BABBITT, DDS, INC.,
IDEAL SALES, INC., LYTLE CAFÉ, and
INDIAN TREE CHIROPRACTIC, P.C.,
individually and on behalf of all
others similarly situated,

        Plaintiffs,

     v.

WELLS FARGO MERCHANT SERVICES,
LLC,

        Defendant.

CIVIL ACTION NO.

1:17-CV-04583-LDW-GRB

---------------------------------------------------------------

### DEFENDANT WELLS FARGO MERCHANT SERVICES LLC'S
### REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
### PLAINTIFFS' SECOND AMENDED COMPLAINT

Jarrod D. Shaw *(admitted pro hac vice)*
jshaw@mcguirewoods.com
Tel: 412-667-7907
Mary J. Hackett (NY Id. No. 4587622)
mhackett@mcguirewoods.com
Tel: 412-667-7944
MCGUIREWOODS LLP
Tower Two-Sixty
260 Forbes Avenue, Suite 1800
Pittsburgh, PA 15222

Anastasia P. Cordova
acordova@mcguirewoods.com
Tel: 212-548-7016
MCGUIREWOODS LLP
1251 Avenue of the Americas, 20th floor
New York, NY 10020-1104

*Attorneys for Defendant*

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ........................................................................................................ 1

II.   ARGUMENT .............................................................................................................. 1

      A.   Plaintiffs Have Failed to State a Fraudulent Inducement Claim............................ 1

      B.   Plaintiffs Have Not Pled a Breach of Contract ...................................................... 5

           i.    The Agreements Authorize the Fees WFMS Charged ............................. 5

           ii.   The Claims for a Breach of Covenant of Good Faith and Fair
                 Dealing Fail in Light of the Breach of Contract Claim ........................... 9

           iii.  The Contractual Notice Provisions Bar Plaintiffs' Claims .................... 12

                 1.   All Versions of the Program Guide Plaintiffs Received
                      Contain Substantially Identical Notice Provisions .................... 12

                 2.   Plaintiffs' Failure to Comply with the Notice Provisions
                      Bars Their Right to Recovery ................................................... 13

                 3.   The Notice Provisions Apply to the Challenged Charges .......... 14

                 4.   The Notice Provisions are Enforceable...................................... 15

                 5.   Plaintiffs Have Not Alleged Compliance with the Notice
                      Provisions.................................................................................. 16

           iv.   The Statute of Limitations Bars Claims that Pre-Date August 4,
                 2016......................................................................................................... 18

      C.   Plaintiffs' Reliance on the Agreements Bars the Unjust Enrichment
           Claims ................................................................................................................. 19

      D.   The Court Should Decline to Consider the Declaration of Roy Parkes.............. 20

III.  CONCLUSION......................................................................................................... 20

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ahmed Elkoulily, M.D., P.C. v. N.Y. State Catholic Healthplan, Inc.*,
   61 N.Y.S.3d 83 (App. Div. 2d Dep't 2017)....................................................11

*Bank of N.Y. Mellon Trust Co. v. Morgan Stanley Mortg. Capital, Inc.*,
   821 F.3d 297 (2d. Cir. 2016).........................................................................14

*Benex LC v. First Data Merch. Servs. Corp.*,
   No. 14-CV-6393, 2016 U.S. Dist. LEXIS 33849 (E.D.N.Y. Mar. 16, 2016).........1, 11, 13, 16

*Berrie v. Bd. of Educ. of the Port Chester-Rye Union Free Sch. Dist.*,
   No. 14-CV-6416 (CS), 2017 U.S. Dist. LEXIS 83623 (S.D.N.Y. May 31,
   2017) ...............................................................................................................16

*Burton v. iYogi, Inc.*,
   No. 13-CV-6296, 2015 U.S. Dist. LEXIS 33809 (S.D.N.Y. Mar. 16, 2015) .........................19

*Certified Fence Corp. v. Felix Indus., Inc.*,
   687 N.Y.S.2d 682 (App. Div. 2d Dep't 1999).................................................18

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002)............................................................................8

*Chapman v. Skype Inc.*,
   220 Cal. App. 4th 217 (2013) .........................................................................3

*Couch v. AT&T Servs.*,
   No. 13-CV-2004, 2014 U.S. Dist. LEXIS 178889 (S.D.N.Y. Dec. 31, 2014) .........................8

*Degelman Indus. V. Pro-Tech Welding & Fabrication, Inc.*,
   No. 06-CV-6346T, 2011 U.S. Dist. 147953 (W.D.N.Y. Dec. 23, 2011)...................8

*DiCroce v. Wells Fargo Bank, N.A.*,
   No. 13-CV-1768, 2014 U.S. Dist. LEXIS 140314 (E.D.N.Y. Sept. 26, 2014) .........................14

*Drum Major Music Entertainment Inc. v. Young Money Entertainment, LLC*,
   No. 11 Civ.1980 (LBS), 2012 U.S. Dist. LEXIS 17290, at *5 (S.D.N.Y. Feb.
   6, 2012). ..........................................................................................................19

*Dzanoucakis v. Chase Manhattan Bank, USA*,
   No. 06-CV-5673, 2009 U.S. Dist. LEXIS, at *23 (E.D.N.Y. Mar. 31, 2009) .........................8

*Energy Capital Co. v. Caribbean Trading & Fid. Corp.*,
   No. 93-CV-8100, 1996 U.S. Dist. LEXIS 4170 (S.D.N.Y. April 3, 1996) ..............................4

*Ginnet v. Computer Task Grp., Inc.*,
   962 F.2d 1085 (2d Cir. 1992).................................................................................................14

*Gizzi v. Hall*,
   754 N.Y.S.2d 373 (App. Div. 3d Dep't 2002) ....................................................................3, 4

*ICD Holdings S.A. v. Frankel*,
   976 F. Supp. 234, 243-44 (S.D.N.Y. 1997) ..........................................................................10

*Kidder v. Peabody & Co. v. Unigestion Int'l, Ltd.*,
   903 F. Supp. 479 (S.D.N.Y. 1995).........................................................................................14

*Krys v. Sugrue*,
   No. 07 MDL 1902, 2012 U.S. Dist. LEXIS 25661 (S.D.N.Y. Feb. 16, 2012) .......................20

*Lefkowitz v. Reissman*,
   No. 12-CV-8703, 2014 U.S. Dist. LEXIS 30845 (S.D.N.Y. Mar. 7, 2014) ....................19, 20

*Liberty Media Corp. v. Vivendi Universal, S.A.*,
   02 Civ. 5571, 2004 U.S. Dist. LEXIS 7015 (S.D.N.Y. April 22, 2004)..................................5

*Meyer v. Colavita USA, Inc.*,
   No. 10–61781–CIV, No. 10–61793–CIV, 2011 U.S. Dist. LEXIS 162814
   (S.D. Fla. Sept. 13, 2011)................................................................................................16, 17

*Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*,
   418 F.3d 168 (2d Cir. 2005)...................................................................................................19

*New Beginnings Healthcare for Women, LLC v. EVO Payments Int'l, LLC*,
   No. 17-cv-3650 (E.D.N.Y. Aug. 31, 2017)...............................................................................7

*Orange Cty. Choppers, Inc. v. Olaes Enters.*,
   497 F. Supp. 2d 541 (S.D.N.Y. 2007).....................................................................................11

*Prendergast v. Hobart Corp.*,
   NO. 04-CV-5134, 2010 U.S. Dist. LEXIS 82077 (E.D.N.Y. Aug. 12, 2010)........................20

*Richbell Info. Servs., Inc. v. Jupiter Partners, L.P.*,
   765 N.Y.S.2d 575 (App. Div. 1st Dep't 2003) .......................................................................11

*Southwick Clothing LLC v. GFT (USA) Corp.*,
   No. 99 Civ. 10542, 2004 U.S. Dist. LEXIS 25336 (S.D.N.Y. Dec. 15, 2004).............7, 17, 20

*Stevenson v. Tyco Int'l (US) Inc.*,
   No. 04-CV-4037, 2006 U.S. Dist. LEXIS 71852 (S.D.N.Y. Sept. 29, 2006)..........................15

*In re Toscano*,
    799 F. Supp. 2d 230 (E.D.N.Y. 2011) ...................................................................5

*Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*,
    487 F.3d 89 (2d Cir. 2007)......................................................................11, 12

*Travelers Cas. & Sur. Co. v. Dormitory Auth.-State of N.Y.*,
    735 F. Supp. 2d 42 (S.D.N.Y. 2010)...................................................................17

*Tropical Sails Corp. v. Yext, Inc.*,
    No. 14-CV-7582, 2015 U.S. Dist. LEXIS 64722 (S.D.N.Y. May 18, 2015) .........................19

*Udell v. Berkshire Life Ins. Co. of Am.*,
    No. CV-03-2721, 2005 U.S. Dist. LEXIS 44636 (E.D.N.Y. May 18, 2005) .........................14

*Welch v. TD Ameritrade Holding Corp.*,
    No. 07 Civ. 6904, 2009 U.S. Dist. LEXIS (S.D.N.Y. July 27, 2009).......................................4

*Wiseman v. ING Groep, N.V.*,
    No. 16-cv-07587, 2017 U.S. Dist. LEXIS 161465 (S.D.N.Y. Sept. 28, 2017) ................10, 11

*Zam & Zam Super Market, LLC v. Ignite Payments, LLC*,
    Case No. 2:16-cv-06370 (E.D.N.Y. Oct. 31, 2017), (J. Feuerstein).......................1, 10, 13, 15

## I.    <u>INTRODUCTION</u>

Plaintiffs' opposition to Wells Fargo Merchant Services, LLC's ("WFMS") Motion to Dismiss ("Motion") does not rebut the case dispositive issues barring Plaintiffs' claims.  To the contrary, it raises arguments that lack a basis in law and ignore the contractual agreements between the parties.   As a result, the Second Amended Complaint ("SAC") warrants dismissal with prejudice.

As an initial bar to their claims, Plaintiffs fail to identify why the documents Plaintiffs received prior to entering into the Agreements with WFMS do not preclude their fraudulent inducement claim.   As to their breach of contract claim, it likewise fails because: (1) the documents Plaintiffs reviewed and received bar their claim; (2) Plaintiffs have failed to show compliance with mandatory notice provisions, which is an argument that has been accepted in this District in two separate cases, *Benex* and *Zam & Zam*; and (3) the contractual statute of limitations bars most of Plaintiffs' claims.   Additionally, Plaintiffs' claim for breach of the covenant of good faith and fair dealing is duplicative of the breach of contract claim and must be dismissed.  Lastly, in light of the express Agreements between the parties, upon which Plaintiffs sued, their claim for unjust enrichment fails.   As a result, the SAC should be dismissed in its entirety with prejudice.

## II.    <u>ARGUMENT</u>

### A.    **Plaintiffs Have Failed to State a Fraudulent Inducement Claim**

Plaintiffs' fraudulent inducement claim is premised on the unfounded contention that WFMS misrepresented and/or concealed that Plaintiffs would incur Non-Qualified Interchange Fees[1] as opposed to a fixed fee.  Plaintiffs fail to allege with specificity facts to support their claim and fail to address the very documents that Plaintiffs executed, reviewed, and agreed to at

---

[1] All initial capitalized terms are defined in the Motion.

the time they contracted with WFMS.  As set forth in the Motion, all six Plaintiffs concede that they received Pricing Terms from WFMS representatives prior to entering into the Agreements, and that those terms matched the terms that later became part of the Agreements.  SAC ¶¶ 36-37, 141, 169, 189, 208, 232, 252.  Moreover, Plaintiffs admit that they were "satisfied" with and agreed to the Pricing Terms.  *Id.* ¶¶ 144, 171, 189, 208, 231, 250.  Plaintiffs cannot avoid the Pricing Terms or the repeated disclosures related to Non-Qualified Interchange Fees, the very fees they now use as the basis for their claim.

In particular, the Pricing Terms reflect Plaintiffs' pricing method and specifically identify that Plaintiffs may incur fees in connection with transactions that do not qualify for the most favorable pricing.  *See* Shaw Decl. Ex. 4, p. 1 (disclosing "Non-Qual Fees").  Thus, the existence of Non-Qualified Interchange Fees was disclosed in the description of the pricing method Plaintiffs elected.  On the same page, the Pricing Terms refer the merchant to a link containing the Non-Qualified Interchange Fee Schedule ("Schedule") and Interchange Pricing Summary ("Summary") and provide a detailed table of "Other Processing Fees."  *Id.*  The Pricing Terms also urge the merchants as follows: "IMPORTANT:  . . . Please review the information on the Interchange Pricing Summary for more information about when the Non-Qualified Interchange Fees and Non-qualified Surcharges apply, as well as the amount of such Fees and Surcharges." *Id.* at p. 3.

In turn, the Schedule is a seven-page document that lists all Non-Qualified Interchange Fees that Plaintiffs could incur as part of their relationship with WFMS.  The Summary is a two-page document that explains how Non-Qualified Interchange Fees may be incurred.  The Schedules for all Plaintiffs are attached to the Second Declaration of Jarrod D. Shaw ("Second Shaw Declaration") as Exhibit B; *see also* [D.E. 18-1 at pp. 11-19].  Far from "buried," as

Plaintiffs allege, the Schedule and Summary are concise and explicitly describe the Non-Qualified Interchange Fees and the situations in which those fees may be incurred.  On their face, these terms are conspicuous and clear and bar any fraudulent inducement claims.

To avoid these disclosures and Plaintiffs' admission that they received the same,[2] Plaintiffs rely on *Chapman v. Skype Inc.*, 220 Cal. App. 4th 217 (2013).  In that inapposite case, which involved consumer protection considerations, Skype advertised as "unlimited" certain calling plans that actually had limitations on the number of minutes and calls.  *Id.* at 227-28.  The word "unlimited" had a footnote directing the consumer to Skype's "fair usage policy," which described the limitations.  *Id.*  The court found that the words "fair usage policy" did not alert a reasonable consumer that he or she needed to check the policy to understand the limitations on a purportedly unlimited plan.  *Id.*  Here, Non-Qualified Interchange Fees were specifically disclosed in the name of each Plaintiff's pricing method and further described in the Schedule and Summary.  Additionally, the Pricing Terms expressly advised Plaintiffs to check the Schedule and Summary and familiarize themselves with Non-Qualified Interchange Fees. Unlike *Chapman*, Non-Qualified Interchange Fees were explained in documents appropriately titled *Fee* Schedule and *Pricing* Summary, and Plaintiffs were encouraged to review those documents.  Plaintiffs further rely on *Gizzi v. Hall*, where the court held that whether a reasonable buyer could have ascertained information about the property through an inspection was a question of fact.  754 N.Y.S.2d 373, 377 (App. Div. 3d Dep't 2002).  Here, WFMS did not leave it up to Plaintiffs to ascertain the details of the Pricing Terms but provided them with the

---

[2] The Merchant Application Checklist, Acknowledgment and Signature Page each Plaintiff signed demonstrate that Plaintiffs received the Schedule and Summary, among other documents. *See* Second Shaw Decl., Ex. A.

Schedule and Summary describing the Non-Qualified Interchange Fees.  Shaw Decl., Ex. 4.

Thus, *Gizzi* is also inapplicable.

In light of the fact that all potentially applicable fees and surcharges were clearly and conspicuously disclosed in the Pricing Terms negotiated with each Plaintiff, Plaintiffs have failed to plead how they were fraudulently induced to enter into the Agreements.  *See, e.g.*, *Welch v. TD Ameritrade Holding Corp.*, No. 07 Civ. 6904, 2009 U.S. Dist. LEXIS, at *115-17 (S.D.N.Y. July 27, 2009) (dismissing fraud claims based on omissions in light of the disclosures defendants provided).

Plaintiffs' "concealment" theory also fails because they have not alleged, nor could they, that a fiduciary relationship existed between the parties giving rise to a duty to disclose.  *See Energy Capital Co. v. Caribbean Trad. & Fid. Corp.*, No. 93-CV-8100, 1996 U.S. Dist. LEXIS 4170, at *23-25 (S.D.N.Y. Apr. 3, 1996).  Nor have Plaintiffs shown that WFMS possessed superior knowledge of Non-Qualified Interchange Fees where that knowledge was not readily available to Plaintiffs.  To the contrary, all information available about Non-Qualified Interchange Fees was provided to Plaintiffs in an easy-to-read, clear format prior to Plaintiffs' acceptance of the Pricing Terms.  Plaintiffs have not alleged, nor could they, that WFMS knew that Plaintiffs had misunderstood or not read that information, because Plaintiffs have admitted that they did receive the information.  *See id.* (finding no duty to disclose where superior knowledge was alleged in a speculative, conclusory statement).

Having agreed to the Pricing Terms, which explained in detail the Non-Qualified Interchange Fees and surcharges at issue here, Plaintiffs cannot maintain that they were fraudulently induced into an "upcharge scheme" or any other improper charges.  Stated simply, Plaintiffs' claims are nothing more than complaints that they did not read or understand the terms

to which they agreed.  *See In re Toscano*, 799 F. Supp. 2d 230, 246 (E.D.N.Y. 2011) (holding

that where plaintiff chose to sign binding document without reading it, his failure to read it and

"not to procure it to be read" were negligent, and court would not invalidate the agreement on the

ground of fraudulent inducement).[3]  Therefore, their claim for fraudulent inducement fails as a

matter of law.

> **B.    Plaintiffs Have Not Pled a Breach of Contract Claim**

Plaintiffs argue that their breach of contract claims survive the Motion because: (1) the

challenged fees were improper notwithstanding the express provisions in the Agreements

permitting those fees; and (2) WFMS exercised its discretion under the Agreements in bad faith,

thus breaching the covenant of good faith and fair dealing.  Both arguments fail.

> **i.    The Agreements Authorize the Fees WFMS Charged Each Plaintiff**

In the Motion, WFMS cited numerous contractual provisions that expressly preclude

Plaintiffs' claims.  To overcome these case defeating issues, Plaintiffs try to create ambiguities

and alternate explanations of the contractual terms, none of which supports Plaintiffs' claims.

***Paper Statement Billing Fees (Queen City).***  Although Queen City argues that its general

allegations regarding electronic statements are sufficient [Opp. at 18], it failed to allege

compliance with the Pricing Terms regarding activation and maintenance of Business Track and

thus cannot maintain that it properly terminated paper billing.  Shaw Decl., Ex. 5 (Queen City),

Pricing Terms at p. 2, n. 7.  Recognizing this deficiency, Queen City offers to amend the SAC.

---

[3] Plaintiffs also argue that the integration clause does not apply and that they adequately pled fraudulent inducement.  Opp. at 11-17.  The integration clause applies, however, and bars Plaintiffs' reliance on pre-contractual representations because all Plaintiffs are sophisticated business entities that should have insisted on including the alleged representations in the Agreements.  *Liberty Media Corp. v. Vivendi Universal, S.A.*, 02 Civ. 5571, 2004 U.S. Dist. LEXIS 7015, at *12 (S.D.N.Y. April 22, 2004).

Opp. at 18 n.5.  Having had *two* opportunities already to re-plead, Queen City should not be permitted a third bite at the proverbial apple.[4]

  **PCI Fees (Queen City and Patti's Pitas).**  Queen City and Patti's Pitas do not dispute that PCI compliance fees are appropriately charged to Level 4 clients who utilize a gateway or value added reseller.  Instead, they argue that they should not be charged these fees because they did not use the gateways listed on their Pricing Terms.  Opp. at 18-19.  The Pricing Terms do not distinguish between *setting up* an account to use a getaway and actually *using* that service.  The Pricing Terms for both Patti's Pitas and Queen City list gateways, and neither Plaintiff has alleged that it asked WFMS to update the Pricing Terms to remove the gateways or informed WFMS that they were not using the gateways.  As a result, the PCI fees were properly assessed.

  Patti's Pitas also contends that FreedomPay FreeWay GW Ret, MOTO-v.1 listed on its Pricing Terms is not a gateway.  *Id.* at 19.  FreedomPay, a company that offers the FreeWay products, specifically defines FreeWay as a "powerful and configurable *gateway* enabling a variable myriad of transactions."[5]  As a result, Patti's Pitas' contention is unsupported.

  **Monthly Service Fees (Queen City).**  Queen City rehashes the allegations in the SAC that the monthly service fees should not have been charged in the months Queen City did not operate.  *Compare* SAC ¶¶ 153-54 *with* Opp. at 19-20.  The Pricing Terms, however, state that the service fee would be charged "per month."  Queen City is bound by the contract it acknowledged and signed.

  **Miscellaneous "Other Processing Fees" (Lytle Café).**  The Pricing Terms contradict Lytle Café's allegations that the AUG PURCHASE MPRT TERMINAL BILLING FEE of

---

[4] If the Court finds that Queen City's claims are adequately pled, they are still untimely as Queen City also failed to comply with contractual notice provisions.  *See infra* Section B(iv).
[5] *See*   http://corporate.freedompay.com/press_release/freedompay-introduces-freeway-flexible-processing/ (last visited February 21, 2018).

$35.00 and the AUG TERMINAL PUR/RENT TAX TERMINAL PUR/RENT TAX of $2.90 were improper.   The Pricing Terms included Lytle Café's selected purchase of one card imprinter at $35.00.  *See* Shaw Decl., Ex. 5 (Lytle Café Pricing Terms), at p. 2.  As a result, the $35.00 fee and the attendant purchase tax were proper, were disclosed, and were accepted by Lytle Café.[6]

Lytle Café also argues that the agreed-upon Annual Fee should have been $45, not $75, and attaches a version of the Pricing Terms that bears written notations changing the fee amount. *See* Declaration of Adam E. Webb ("Webb Declaration"), Ex. B.  Although Lytle Café asserts that a WFMS representative made the notations,[7] Exhibit B does not contain any indication that WFMS agreed to and approved the revisions, or that those revisions constitute the governing Pricing Terms.  Consequently, the $75.00 fee reflected on the Pricing Terms WFMS attached to the Motion was appropriately charged.

***Raising Fees/Rates Without Providing Proper Advance Notice (Babbitt and Indian Tree).***  Babbitt and Indian Tree argue that the notices were improperly attached to the Motion because they: (1) were attached to an attorney's declaration; and (2) are not integral to the SAC. Opp. at 21.  Additionally, Babbitt and Indian Tree contend that the notices, even if received, are ineffective.  *Id.*

---

[6] Plaintiffs' reliance on *New Beginnings Healthcare for Women, LLC v. EVO Payments Int'l, LLC*, No. 17-cv-3650, at 13-14 (E.D.N.Y. Aug. 31, 2017) is misplaced because in that case, the defendant relied on ambiguous terms such as "certain circumstances" in support of its right to impose additional fees.  WFMS is relying on the Pricing Terms, Summary, and Schedule, which authorize specific fees and describe the circumstances when those fees are charged.  Shaw Decl., Ex. 4, Second Shaw Decl., Ex. B.  In particular, the $35.00 fee for a card printer Lytle Café incurred is listed in the Pricing Terms.  Shaw Decl., Ex. 5 (Lytle Café Pricing Terms), at p. 2.

[7] These allegations in the Opposition are an improper amendment of the SAC.  *Southwick Clothing LLC v. GFT (USA) Corp.*, No. 99 Civ. 10542, 2004 U.S. Dist. LEXIS 25336, at *20-21 (S.D.N.Y. Dec. 15, 2004) ("A complaint cannot be amended merely by raising new facts and theories in plaintiffs' opposition papers, and hence such new allegations and claims should not be considered[.]").

First, using attorney declarations to introduce documents is widely-accepted.  *See, e.g.*, *Degelman Indus. V. Pro-Tech Welding & Fabrication, Inc.*, No. 06-CV-6346T, 2011 U.S. Dist. 147953, at *10-11 (W.D.N.Y. Dec. 23, 2011) ("attorney affidavits are acceptable . .  when a party uses them only as a vehicle through which to present admissible evidence relevant to the matter at hand").  Here, the notices attached as Exhibit 6 to the Shaw Declaration are appropriate.

Second, under New York's "mailbox rule," there is "a presumption that a party has received documents when [the documents] are mailed to the party's address in accordance with regular office procedures."  *Couch v. AT&T Servs.*, No. 13-CV-2004, 2014 U.S. Dist. LEXIS 178889, at *13 (S.D.N.Y. Dec. 31, 2014).  Plaintiffs do not allege that the notices were addressed improperly or not mailed, and therefore they have not rebutted the presumption of having received the notices.  *Dzanoucakis v. Chase Manhattan Bank, USA*, No. 06-CV-5673, 2009 U.S. Dist. LEXIS, at *23 (E.D.N.Y. Mar. 31, 2009) ("[A] party must do more than merely assert that it did not receive the mailing; its testimony or affidavit of non-receipt is insufficient, standing alone, to rebut the presumption.").

Third, the notices are clearly integral to the complaint because, although they are not incorporated by reference, the SAC relies heavily on their terms and effect.  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *see also* SAC ¶¶ 94-98.  Lastly, Plaintiffs' generic, non-specific allegations against WFMS' general notice practices bear no relevance to whether Plaintiffs adequately allege breach of contract based on the alleged failure to provide notices.  As a result, the allegations in SAC ¶¶ 94-98 are irrelevant.

***Excessive Non-Qualified Interchange Fees and Surcharges (All Plaintiffs)***.  Plaintiffs do not dispute that the Summary, Pricing Terms, and Schedule explain and authorize the Non-

Qualified Interchange Fees that Plaintiffs could incur, as well as the circumstances in which those fees are charged.  *See* Opp. at 21-22; Shaw Decl., Ex. 5; Second Shaw Decl., Ex. B; [D.E. 18-1 at pp. 11-19].  Nor have Plaintiffs identified a single fee or surcharge they incurred that is not explained or was not authorized by Plaintiffs in the negotiated documents described above. As a result, Plaintiffs cannot state a claim for a breach of contract based on the Non-Qualified Interchange Fees.  Moreover, Plaintiffs have not alleged that the statements they received failed to list the charges for those fees.  *See* Shaw Decl., Ex. 7.  Simply stated, Plaintiffs cannot now ask the Court to rewrite or ignore the terms of the documents they acknowledged and signed.

>    **ii.    The Claims for a Breach of the Covenant of Good Faith and Fair Dealing Fail in Light of the Breach of Contract Claim**

Plaintiffs argue that: (1) they adequately allege a claim for a breach of the covenant of good faith and fair dealing based on WFMS' alleged abuse of its discretion to increase fees and charge Non-Qualified Interchange Fees; (2) the breach of covenant claim is based on different facts than the breach of contract claim; and (3) the breach of covenant claim does not negate WFMS' rights.  Opp. at 22-27.  Each of these arguments lacks merit.

As an initial matter, Plaintiffs concede that WFMS was contractually authorized to increase fees.  Opp. at 24; [D.E. 18-2 at p. 10, § 5.6].  Yet, they argue that WFMS violated the covenant of good faith and fair dealing because the increases served WFMS' interests.  *Id.*  Other than the conclusory allegations that the increases were "implemented for no other reason than to increase profits" [SAC ¶ 100] or to benefit WFMS' "bottom line" [*id.* ¶¶ 200, 219, 259, 287], Plaintiffs have not alleged any *facts* that WFMS abused its discretion in increasing the fees, nor do they dispute that they never exercised their contractual rights to terminate their relationships

with WFMS after the fees changed.[8]   As noted above, the details concerning Non-Qualified Interchange Fees were explained in the Pricing Terms, the Summary, and the Schedule. Plaintiffs do not allege that WFMS imposed Non-Qualified Interchange Fees outside of the terms of those documents.   As a result, Plaintiffs cannot reasonably argue that WFMS abused its discretion at all.

Moreover, the breach of covenant and breach of contract claims are based on the same facts.  *Compare* SAC ¶ 285(b) ("Defendant has materially violated the specific terms of its form contracts . . . by charging "Statement Billing Fees") *with* ¶ 288 ("Defendant also violated the covenant of  good faith and fair dealing by abusing any discretion defendant may have had to impose Statement Billing Fees"); SAC ¶ 285(g) (alleging a breach of contract in connection with "charging non-qualified fees and surcharges") *with* ¶ 289 ("Defendant also violated the covenant of good faith and fair dealing by assessing pervasive non-qualified upcharges and surcharges"). As a result, the breach of covenant claim should be dismissed as duplicative.  *See, e.g.*, *ICD Holdings S.A. v. Frankel*, 976 F. Supp. 234, 243-44 (S.D.N.Y. 1997); *Zam & Zam Super Market, LLC v. Ignite Payments, LLC*, Case No. 2:16-cv-06370 (E.D.N.Y. Oct. 31, 2017), at 40 (J. Feuerstein) ("Here, Plaintiff relies upon the same predicate facts for both its breach of contract and its breach of the covenant of good faith and fair dealing. . . These claims are therefore duplicative and Plaintiff's claim based upon the implied covenant of good faith and fair dealing is dismissed.").

The cases Plaintiffs cite do not mandate a different result.  In *Wiseman v. ING Groep, N.V.*, the court declined to dismiss the claim for a breach of the covenant of good faith and fair

---

[8] Plaintiffs had the option to terminate the Agreements without penalty in the event of new fees or increases.  *See* Second Shaw Decl., Ex. C § 23.3, Ex. D § 10.3; [D.E. 18-2 at p. 12, § 10.3].  If Plaintiffs believed that WFMS acted in bad faith, they had an opportunity to terminate the relationship without incurring the complained-of fees or increases.

dealing because that claim was based on *implied* promises not made part of the express contract. No. 16-cv-07587, 2017 U.S. Dist. LEXIS 161465, at *24 (S.D.N.Y. Sept. 28, 2017).  Similarly, in *Orange Cty. Choppers, Inc. v. Olaes Enters.*, the court permitted claims for a breach of the implied covenant only to the extent they did not mirror any "claimed breach of an explicit contractual provision."  497 F. Supp. 2d 541, 560 (S.D.N.Y. 2007).  Here, by contrast, Plaintiffs do not rely on any implied promises in support of their claim.

Further, a finding that WFMS breached the covenant by exercising its contractual rights would negate WFMS' rights under the Agreements.  *See, e.g.*, *Benex LC v. First Data Merch. Servs. Corp.*, No. 14-CV-6393, 2016 U.S. Dist. LEXIS 33849, at *10-11 (E.D.N.Y. Mar. 16, 2016) (dismissing the claim based on defendant's retention of certain fees because those fees determined a price for the defendant's services, an essential term of the parties' contract).  A finding that WFMS was not entitled to charge contractually-authorized fees, or increase those fees as disclosed in the Agreements, would "jettison the terms of the [Agreements]," which establish a price for WFMS' services.  *Id.*

Moreover, *Richbell Info. Servs., Inc. v. Jupiter Partners, L.P.*, *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, and *Ahmed Elkoulily, M.D., P.C. v. N.Y. State Catholic Healthplan, Inc.*, are all distinguishable.  In *Richbell*, the defendant's veto of an IPO was a breach of the covenant of good faith and fair dealing because the veto was combined with other improper conduct like "blockage of the IPO," a "collusive secret agreement," and a "low-ball foreclosure bid."  765 N.Y.S.2d 575, 586-87 (App. Div. 1st Dep't 2003).  In *Elkoulily*, the defendant terminated the contract "without justification" and by "fabricating information."  61 N.Y.S.3d 83, 87 (App. Div. 2d Dep't 2017).  Plaintiffs have not alleged similar conduct here.  In *Tractebel*, the court dismissed the plaintiff's allegation that the defendant violated the covenant

of good faith and fair dealing by seeking "a credit increase pursuant to [the contract] which [the plaintiff] claims was based on 'planted quotations.'"   487 F.3d 89, 99 (2d Cir. 2007).   Similarly, here, the Non-Qualified Interchange Fees and the fee increases, which are authorized by the Agreements, cannot constitute a basis for a claim for a breach of the covenant of good faith and fair dealing.

### iii.   The Contractual Notice Provisions Bar Plaintiffs' Claims

Plaintiffs argue that the notice requirements in the Program Guide do not preclude their claims because: (1) discovery is needed to ascertain the applicability of the Program Guide to all Plaintiffs; (2) the notice requirements are not express conditions precedent to bringing this suit; (3) the notice requirements do not apply to the challenged charges; (4) the notice requirements are unenforceable; and (5) Plaintiffs complied with the notice requirements.   These arguments fail.

### 1.   All Versions of the Program Guide Plaintiffs Received Contain Substantially Identical Notice Provisions

Plaintiffs allege that Queen City, Patti's Pitas, and Lytle Café received "Version 1707" of the Program Guide (D.E. 18-2), Babbitt and Ideal Sales are subject to "Version WFB1405," and Indian Tree is subject to "Version WFB1601."   Opp. at 28.   True and correct copies of Versions WFB1405 and WFB1601 are attached to the Second Shaw Declaration as Exhibits C and D, respectively.   Version WFB1601 has notice provisions that are identical to the ones already before the Court.   Second Shaw Decl., Ex. D, §§ 5.2, 5.11.   The notice provisions in Version WFB1405, which are substantially similar to those in the other two versions, appear at Sections 18.2 and 18.11.   *See id.*, Ex. C.   Given Plaintiffs' reliance on the Program Guide, the Court may review the Versions to decide the Motion without additional discovery given that the Program

12

Guide is integral to the SAC and each contains nearly identical notice provisions (collectively, "Notice Provisions").

> **2.    Plaintiffs' Failure to Comply with the Notice Provisions Bars Their Right to Recovery**

Plaintiffs maintain that their failure to comply with the Notice Provisions does not bar their claims because the Notice Provisions are not express conditions precedent.  Opp. at 29-32. With respect to Non-Qualified Interchange Fees, the Program Guide provides that "[Non-Qualified Fee Inquiry] requests received after the 90 day limit may not be considered for refund review."  *See* Second Shaw Decl., Ex. C at p. 18, § 18.2, Ex. D at p. 8, § 5.2; [D.E. 18-2 at p. 9, § 5.2].   Similarly, with respect to "transaction activity," the Program Guide provides that "If you notify us after sixty (60) days, we shall have no obligation to investigate or effect any adjustments."  *See* [D.E. 18-2 at p. 10, § 5.11]; Second Shaw Decl., Ex. C at p. 19, § 18.11 ("If you notify us after such time period, we may, in our discretion, assist you, at your expense, . . . but we shall not have any obligation to investigate or effect any such adjustments"); Ex. D at p. 9, § 5.11 ("If you notify us after such time period, we shall not have any obligation to investigate or effect any such adjustments").

This Court has treated nearly *identical* contractual language as a bar to recovery.  *See Benex*, 2016 U.S. Dist. LEXIS 33849, at *12-13 ("Benex's failure to comply with the Contract's notice provision also bars its recovery. . . .   Here, the Program Guide clearly requires Benex to notify First Data of any billing issues "within 60 days of the date of the statement where the charge or funding appears."); *Zam & Zam*, Case No. 2:16-cv-06370, at 37 (holding that plaintiff's failure to comply with section nearly identical to Sections 5.11 and 18.11 barred recovery).  Plaintiffs dismiss *Benex* and *Zam & Zam* as wrongly decided, but do not raise any arguments regarding the notice issue that warrant avoiding the preclusive impact of these cases.

Further, the cases Plaintiffs cite are unpersuasive. *Ginnet v. Computer Task Grp.*, *Inc.*, 962 F.2d 1085, 1099-100 (2d Cir. 1992) and *Bank of N.Y. Mellon Trust Co. v. Morgan Stanley Mortg. Capital, Inc.*, 821 F.3d 297, 305 (2d. Cir. 2016) involved provisions that did not have conditional language such as "if" or "subject to."  In *Kidder v. Peabody & Co. v. Unigestion Int'l, Ltd.*, the requirement to notify the defendant upon setting up an account was not a condition precedent to the plaintiff's broad authority to purchase and sell securities, which was in a different section altogether.  903 F. Supp. 479, 501 (S.D.N.Y. 1995).  In *DiCroce v. Wells Fargo Bank, N.A.*, the court rejected the bank's assertion that the release of insurance proceeds was conditioned on the creation of a hazard claim file because the mortgage contract did not even mention hazard claim files.  No. 13-CV-1768, 2014 U.S. Dist. LEXIS 140314, at *15 (E.D.N.Y. Sept. 26, 2014).

Here, the Notice Provisions do contain the conditional language "if" (Sections 5.11 and 18.11) and "Note that" (Sections 5.2 and 18.2), which is sufficient to create a condition precedent.  *Ginnet*, 962 F.2d at 1099-100; *Bank of New York*, 821 F.3d 297 at 305; *Udell v. Berkshire Life Ins. Co. of Am.*, No. CV-03-2721, 2005 U.S. Dist. LEXIS 44636, at *16 (E.D.N.Y. May 18, 2005).  As such, the Notice Provisions constitute conditions to Plaintiffs' right to recover the challenged fees.

### 3.      The Notice Provisions Apply to the Challenged Charges

Sections 5.2 and 18.2 set up a mechanism whereby Plaintiffs could request a refund of Non-Qualified Interchange Fees.  *See* Second Shaw Decl., Ex. C at p. 18, §18.2, Ex. D at p. 8, § 5.2; [D.E. 18-2 at p. 9, § 5.2].  These Sections are clear that WFMS would have no obligation to reimburse Plaintiffs if the procedure set forth therein was not followed.  *Id.*  Although Plaintiffs argue that did not have to investigate Non-Qualified Interchange Fees [Opp. at 33], using this procedure as outlined in Sections 5.2 and 18.2 presented the only means to complain about or

seek recovery in connection with those fees.  Having failed to do so, Plaintiffs may not seek relief from this Court to avoid the dispositive effect of the Notice Provisions.

As to Sections 5.11 and 18.11, this Court in *Zam & Zam* rejected an identical argument to that made in the Opposition that those sections do not apply to fees.  *Zam & Zam*, 2:16-cv-06370-SJF-AYS, at 38.  Plaintiffs do not rebut the holding in *Zam & Zam*.  As a result, this Court should reject Plaintiffs' argument that Sections 5.11 and 18.11 do not apply to the fees Plaintiffs challenge in this case.

### 4.    The Notice Provisions are Enforceable

Plaintiffs argue that the Notice Provisions are unenforceable because: (1) WFMS procured the Agreements by fraud; and (2) WFMS' conduct prevented Plaintiffs from discovering the allegedly improper fees.  Opp. at 36-39.  These arguments lack merit.

First, Plaintiffs contend that the Notice Provisions do not apply because the Agreements are voidable due to the alleged fraud in the inducement.  Opp. at 36.  Even if the Agreements were voidable (they are not), the Agreements remain enforceable unless and until Plaintiffs prove the alleged fraud.  *See Stevenson v. Tyco Int'l (US) Inc.*, No. 04-CV-4037, 2006 U.S. Dist. LEXIS 71852, at *19 (S.D.N.Y. Sept. 29, 2006) ("a voidable agreement imposes the obligations of a valid contract on the parties unless and until it is rescinded. . . .  For example, a contract that is allegedly induced by fraud is voidable but enforceable unless the alleged fraud is proven.").

Second, Plaintiffs have not shown that WFMS interfered with their ability to comply with the Notice Provisions.  The Notice Provisions gave Plaintiffs 60 days in the event of Non-Qualified Interchange Fees, and 90 days in connection with other account activity, to submit a claim.  Even if the charges did not appear until the next statement due to the alleged billing practices, Plaintiffs still had up to two months to comply with the Notice Provisions. Additionally, the argument that Plaintiffs did not know they had to complain has been rejected.

*See Benex*, 2016 U.S. Dist. LEXIS 33849, at *13 (finding the fact that plaintiff alleged improper charges in the complaint foreclosed its argument that it "had no way of knowing" that those charges were improper).  The same is true here.

Moreover, Plaintiffs' own allegations belie their opportunistic argument that they lacked the information needed to complain to WFMS.  For example, Queen City alleges that it complained as far back as February 2016 about improper fees.  SAC ¶¶ 158-61.  Further, all Plaintiffs identified specific examples of the allegedly improper fees.  *See id.* ¶¶ 148, 154, 176, 194, 212, 235, 242, 254.  Additionally, the statements before the Court clearly list all fees incurred by date, type, amount, and a detailed description.  *See* [D.E. 18-3, 18-4]; Shaw Decl., Ex. 7.  As this Court found in *Benex*, the Notice Provisions are enforceable and Plaintiffs were required to comply with them.

### 5.  Plaintiffs Have Not Alleged Compliance with the Notice Provisions

Plaintiffs claim that the generic statement in the SAC that they performed all obligations under the Agreements is sufficient to plead compliance with the Notice Provisions.  Opp. at 39.  This is not what Plaintiffs elected to do in the SAC.  Rather, they identified specific conduct that shows that, as a matter of law, they did not comply with the Notice Provisions.

As an initial matter, Plaintiffs rely on the filing of the original Complaint on August 4, 2017, or the Amended Complaint on October 6, 2017, as satisfying notice under the Notice Provisions.  Under New York law, a complaint is not a proper "writing" sufficient to comply with a notice provision that serves as a condition precedent.  *See Berrie v. Bd. of Educ. of the Port Chester-Rye Union Free Sch. Dist.*, No. 14-CV-6416 (CS), 2017 U.S. Dist. LEXIS 83623, at *24 n.13 (S.D.N.Y. May 31, 2017) (holding that complaint cannot serve as notice where the notice requirement is a condition precedent to filing a legal claim); *Meyer v. Colavita USA, Inc.*,

No. 10–61781–CIV, No. 10–61793–CIV, 2011 U.S. Dist. LEXIS 162814, at *21 (S.D. Fla. Sept. 13, 2011) (same).  Because Patti's Pitas, Babbitt, Lytle Café, and Indian Tree complained only via the complaints filed in this Court, they failed to comply with the Notice Provisions, and all of their claims should be dismissed.  *See* Opp. at 40; SAC ¶¶ 183, 202, 244, 261, 262.

Separately, although Queen City and Ideal Sales rely on "notices" other than the complaints, their allegations fare no better.  Queen City alleges that it complained by email in February 2016 and March 2016 about "new improper fees," "certain fees . . . including the $10 fees that had recently been charged for paper statements and $25 PCI fees," and "unauthorized fees." SAC ¶¶ 158-60.  Queen City also alleges that it complained in December 2016 of "the $25 PCI fee."  What Queen City does not allege, however, is *when* it incurred the complained-of fees and whether its alleged complaints were submitted within the 60- or 90-day window required by the Notice Provisions.  Plaintiffs' statements in the Opposition that "these emails were sent within 60 days of Wells Fargo debiting the improper fees" are insufficient to amend the SAC. *Southwick Clothing*, 2004 U.S. Dist. LEXIS 25336, at *20-21.

Similarly, Ideal Sales alleges only that on August 30, 2017, it "mailed a letter to Defendant disputing the legitimacy of the $290.71 in 'billback' charges that were assessed on its June of 2017 statement."  SAC ¶ 224.  Ideal Sales does not allege what those charges were, whether they complied with the 60-day window imposed by the Notice Provisions, or whether the letter complied with the procedure set forth in Section 18.2.  Although Plaintiffs claim that they were not required to comply with this procedure, the law is clear that conditions agreed to by parties "must be literally performed."  *Travelers Cas. & Sur. Co. v. Dormitory Auth.-State of N.Y.*, 735 F. Supp. 2d 42, 75 (S.D.N.Y. 2010).  The few times Plaintiffs allegedly complained to

WFMS prior to filing the Complaint in August 2017 plainly do not demonstrate compliance with the Notice Provisions, and as a result, the SAC should be dismissed.

### iv.  The Statute of Limitations Bars Claims that Pre-Date August 4, 2016

The majority of Plaintiffs' claims are also time-barred.  Plaintiffs do not dispute that, if the one-year statute of limitations in the Program Guide applies, all claims regarding charges, fees, or occurrences preceding August 4, 2016, are untimely.  Opp. at 42.  In fact, Plaintiffs concede that all of Babbitt's claims are time-barred.  *Id.*  As a result, all of Plaintiffs' claims with respect to charges, fees, or other occurrences that pre-date August 4, 2016, are time-barred.  For example, Babbitt's and Indian Tree's claims that WFMS increased their fees in April 2013, February 2014, and April 2014 [SAC ¶¶ 197-201] and March 2015 and March 2016 [SAC ¶¶ 257-60] are untimely.

Moreover, the statute of limitations is enforceable and reasonable.  As discussed *supra*, WFMS adequately disclosed information about Non-Qualified Interchange Fees in the Pricing Terms, Schedule, and Summary.  *See* Shaw Decl., Ex. 5; [D.E. 18-1 at pp. 11-19]; Second Shaw Decl., Ex. A.   Even if Plaintiffs' alleged theory of a "billback" scheme were true, and Plaintiffs did not see the allegedly wrongful charges until one month after those charges were incurred, Plaintiffs still would have had 11 months to bring claims within the statute of limitations.

To try to overcome their untimely claims, Plaintiffs rely on *Certified Fence Corp. v. Felix Indus., Inc.*, which differs from this case.  There, the contract provided for a 90-day statute of limitations, and a separate "pay-when-paid" clause effectively made all of the plaintiff's claims untimely.  687 N.Y.S.2d 682, 684 (App. Div. 2d Dep't 1999) ("if the two clauses are given effect, and the plaintiff brought an action to recover the value of the work performed within the 90-day limit, the action would have failed by virtue of the non-occurrence of the [pay-when-paid condition].").  Here, no similar conflict existed that would have the practical effect of precluding

Plaintiffs from making a timely claim.  Plaintiffs have not alleged that WFMS concealed the actual statute of limitations, thereby depriving Plaintiffs of all redress.  Nor is the statute of limitations as short as the one in *Certified Fence*.  As set forth in the Motion, New York courts have upheld a 1-year statute of limitations.  *See, e.g.*, *Drum Major Music Entertainment Inc. v. Young Money Entertainment, LLC*, No. 11 Civ.1980 (LBS), 2012 U.S. Dist. LEXIS 17290, at *5 (S.D.N.Y. Feb. 6, 2012).  Accordingly, the statute of limitations provision is valid and precludes all of Plaintiffs' claims arising after August 4, 2016.[9]

C.     **Plaintiffs' Reliance on the Agreements Bars Their Unjust Enrichment Claim**

Plaintiffs argue that they should be allowed to plead unjust enrichment because Plaintiffs were fraudulently induced into the Agreements and the Agreements are ineffective.  *See* Opp. at 44; SAC ¶ 306.  This argument fails because Plaintiffs have alleged the existence of express contracts, sued WFMS for a breach of contract, and attempt to enforce the Agreements against WFMS.  *See* SAC ¶¶ 285-293.  As a result, the unjust enrichment claim must be dismissed.  *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005).

Indeed, the cases Plaintiffs cite support WFMS' position.  In *Burton v. iYogi, Inc.*, No. 13-CV-6296, 2015 U.S. Dist. LEXIS 33809, at *11-12 (S.D.N.Y. Mar. 16, 2015), the court allowed the unjust enrichment claim to proceed because the plaintiff's claims sounded in fraudulent inducement and quasi-contract, not breach of contract, and the plaintiff neither referenced nor relied on the terms of the contract.  Similarly, *Tropical Sails Corp. v. Yext, Inc.*, did not involve a breach of contract claim.  No. 14-CV-7582, 2015 U.S. Dist. LEXIS 64722, at *6-7, *18-20 (S.D.N.Y. May 18, 2015).  In *Lefkowitz v. Reissman*, the court permitted the

---

[9] If any portions of the SAC survive this Motion, Plaintiffs should be ordered to amend their pleading to remove any time-barred allegations.

plaintiff to plead unjust enrichment because the defendants had not challenged the fraudulent inducement claim in their motion.  No. 12-CV-8703, 2014 U.S. Dist. LEXIS 30845, at *33 (S.D.N.Y. Mar. 7, 2014).  Unlike in the cases they cite, Plaintiffs have sued WFMS for breach of contract.  As a result, Plaintiffs' unjust enrichment claims should be dismissed with prejudice.

### D.    The Court Should Decline to Consider the Declaration of Roy Parkes

In opposition to the Motion, Plaintiffs submit a Declaration of Roy Parkes, which purports to offer a premature and inappropriate expert opinion.  At the motion to dismiss stage, aimed at testing the sufficiency of the SAC, the Court should decline to consider this declaration. *See, e.g.*, *Krys v. Sugrue*, No. 07 MDL 1902, 2012 U.S. Dist. LEXIS 25661, at *36 (S.D.N.Y. Feb. 16, 2012) (refusing to consider an expert affidavit filed in opposition to a motion to dismiss).  Moreover, the affidavit is not integral to the SAC, not cited in the SAC, nor does it purport to offer any allegations that are specific to the Plaintiffs at issue in this case.  As a result, the affidavit should be disregarded given that it is a means through which Plaintiffs seek to amend the complaint.  *Southwick Clothing*, 2004 U.S. Dist. LEXIS 25336, at *20-21.  A declaration also is not a proper vehicle to introduce expert testimony, and opinions set forth for the first time in an affidavit should be stricken.  *Prendergast v. Hobart Corp.*, NO. 04-CV-5134, 2010 U.S. Dist. LEXIS 82077, at *13-14 (E.D.N.Y. Aug. 12, 2010).

### III.    CONCLUSION

For the foregoing reasons, and for the reasons set forth in the Memorandum of Law in Support of Motion to Dismiss Plaintiffs' Second Amended Complaint, the Court should dismiss Plaintiffs' Second Amended Complaint in its entirety, with prejudice.

February 21, 2018                              Respectfully submitted,

                                                      */s/ Jarrod D. Shaw*
                                                      Mary J. Hackett (NY Id. No. 4587622)
                                                      mhackett@mcguirewoods.com

Tel: 412-667-7944
Jarrod D. Shaw *(admitted pro hac vice)*
jshaw@mcguirewoods.com
Tel: 412-667-7907
McGuireWoods LLP
Tower Two-Sixty
260 Forbes Avenue
Suite 1800
Pittsburgh, PA 15222

Anastasia P. Cordova
acordova@mcguirewoods.com
Tel: 212-548-7016
McGuireWoods LLP
1251 Avenue of the Americas, 20th floor
New York, NY 10020-1104

*Attorneys for Defendant Wells Fargo Merchant Services, LLC*